United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kobi Karp Architecture & Interior Design, Inc., Plaintiff, <br><br> v. <br><br> O'Donnell Dannwolf and Partners Architects, Inc. and others, Defendants. | ) ) ) ) ) ) ) ) ) Civil Action No. 19-24588-Civ-Scola |

### Order on the Motions to Dismiss

Now before the Court are the Defendants' motions to dismiss. For the reasons set forth below, the Court **grants in part and denies in part** the Defendants' motions (**ECF Nos. 41, 58**).

**1. Background**

The Plaintiff Kobi Karp Architecture & Interior Design, Inc. ("Kobi Karp") sues the Defendants O'Donnell Dannwolf and Partners Architects, Inc. ("ODP"), Kurt Jurgen Dannwolf, and The Surf Club Apartments, Inc. ("The Surf Club") for copyright and trademark infringement relating to a residential development project.

In January of 2018, Kobi Karp entered into an agreement with The Surf Club to design a residential development on Collins Avenue in Surfside, Florida. (Second Amended Complaint, ECF No. 37 at ¶¶ 11, 25.) Kobi Karp prepared the drawings and registered them with the United States Copyright Office (registration numbers VA 2-074-574 and VA 2-0740583). (*Id.* at ¶¶ 27.) In the summer of 2019, The Surf Club hired ODP to replace Kobi Karp as the architect of the project. (*Id.* at ¶ 28.) After taking over the project, ODP submitted an application to the Miami-Dade County Historic Preservation Board ("HPB") seeking a Special Certificate of Appropriateness for construction on a historical structure on the property on behalf of the Surf Club. (*Id.* at ¶ 30.) The works that were submitted were slightly altered versions of Kobi Karp's copyrighted drawings and bore Kobi Karp's registered trademarks. (*Id.* at ¶¶ 34-37.) The Defendants removed information regarding Kobi Karp's authorship before submitting the drawings. As a result of this submission, Kobi Karp sued the Defendants for copyright infringement, violating the Digital Millennium Copyright Act, and various trademark-related violations.

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## 3. Analysis

The Defendants argue that Kobi Karp failed to state a claim for copyright infringement, violating the Digital Millennium Copyright Act, and trademark infringement. The Surf Club also argues that the Court should stay the case pending resolution of a related state court action under *Colorado River* abstention. The Court will address argument each in turn.

### A. Copyright Infringement

#### i. Failure to state a claim

The Copyright Act, 17 U.S.C. § 501(a) forbids a third party from violating the exclusive rights of a copyright owner as provided by Sections 106 through 122 of the Copyright Act. To properly state a claim, a Plaintiff must allege that (1) it owns a valid copyright in the works at issue; and (2) Defendants copied original elements of the works. *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir. 2002). A copyright registration certificate proves "prima facie proof of the existence of a valid copyright." 17 U.S.C. § 401(c). As to the second element, direct evidence of copying is rare, and thus "[p]roof of access and substantial similarity raises only a presumption of copying" raises a presumption that the Defendants copied original elements of the works. *Id.* at 1232.

Here, Kobi Karp alleges that it owns the copyrights, and it attaches the copyright registration certificate for the two copyrights at issue. (ECF No. 37 at ¶ 61; 37-1.) It further alleges that "ODP submitted an application to the Miami-Dade County Historic Preservation Board seeking, on behalf of TSAI, a Special Certificate of Appropriateness for documentation, demolition, and reconstruction" for their development. (ECF No. 37 at ¶ 30.) And, finally Kobi Karp alleges that the Defendants had access to Kobi Karp's copyrights (*id.* at 65) and that the plans that the Defendants submitted were substantially similar to Kobi Karp's plans (*id.* at 66). Therefore, the Plaintiff successfully stated a claim.

#### ii. Fair use

ODP and Dannwolf also argue that the copyright claim must be dismissed because their submission to the HPB constituted fair use. Fair use is an affirmative defense, and affirmative defenses are generally not properly raised at the motion to dismiss stage. *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("the existence of an affirmative defense will [generally] not support a motion to dismiss"). The Court may, however, dismiss a claim based on an affirmative defense if that defense "clearly appears on the face of the complaint." *Id.* ODP and Dannwolf argue that here, the allegations in the complaint clearly show that the submission of the drawings was fair use. The Court disagrees.

When determining whether a use is considered "fair use," the Court looks to four non-exhaustive factors: "(1) the purpose and character of the allegedly infringing use; (2) the nature of the copyrighted work; (3) the amount of the

copyrighted work used; and (4) the effect of the use on the potential market or value of the copyrighted work." *Katz v. Google*, 802 F.3d 1178, 1181 (11th Cir. 2015). The four factors are "not to be treated in isolation from one another." *Id*. "Rather, they are all to be explored, and the results weighed together, in light of the purposes of the copyright." *Id*. At this stage, the factors do not clearly weigh in favor of a finding of fair use. For example, the second and third factors cannot be clearly analyzed from the face of the complaint. The second factor recognizes that "there is a hierarchy of copyright protection in which original, creative works are afforded greater protections than derivative works or factual compilations." *Id*. at 1183. From the face of the complaint, the Court cannot determine whether Kobi Karp's drawings are derivative of another work or are unique and creative. The third factor analyzes "the amount and sustainability of the portion used in relation to the copyrighted work as a whole," this factor "weighs less when considering a photograph—where all of most of the work often must be used in order to preserve any meaning at all." Here, the Court cannot determine from the face of the complaint, what changes the Defendants made to Kobi Karp's drawings before their submission and what portions were copied verbatim. In sum, the Court cannot determine that the Defendants' submission of the drawings to the HPB constitutes fair use at this stage of the litigation.

### iii. Nonexclusive license

The Surf Club argues that the copyright claims must be dismissed because it had a nonexclusive license to use Kobi Karp's drawings. A license is an affirmative defense to copyright infringement. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010). As stated above, affirmative defenses are generally not properly raised at the motion to dismiss stage unless the defense "clearly appears on the face of the complaint." *Quiller*, 727 F.2d at 1069. The Surf Club argues that here, the allegations in the complaint and its attachments clearly show that Kobi Karp granted it a nonexclusive irrevocable license.

Kobi Karp attached its agreement with The Surf Club to its Second Amended Complaint. (*See* ECF No. 37-3.) The Agreement states that Kobi Karp

> grants to [The Surf Club] a nonexclusive, irrevocable license to reproduce and use the Instruments of Service for purposes of constructing, using, maintaining, altering, renovating and completing the Project, provided that the Owner pays the Architect the compensation for work completed to date under this Agreement.

(*Id*. at 16.) It also states that "[t]he Owner may use the Instruments of Service for future additions or alterations to the Project or for the completion of the Project by others." (*Id*. at 17.) Both parties signed the agreement. *Id*; *see also* 17 U.S.C. § 204(a) ("A transfer of copyright ownership . . . is not valid unless an

instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed.").

However, it is not apparent from the face of the complaint that The Surf Club paid Kobi Karp the compensation for work completed to date under the Agreement as required before obtaining the license. Indeed, the Second Amended Complaint states "[t]o date, [Kobi Karp's] invoice remains unpaid, as a result of which [The Surf Club] and ODP are not licensed to use [Kobi Karp's] works." (ECF No. 37 at ¶ 44.) Because the affirmative defense is not clear from the face of the complaint, this matter cannot be properly resolved at this stage of the litigation.

### B. Removal of Copyright Management Information

Under the Digital Millennium Copyright Act ("DMCA"), it is illegal to "(1) intentionally remove or alter any copyright management information," . . . or "(3) distribute . . . copies of works . . . knowing that copyright information has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(1), (3). "Copyright management information" includes "information conveyed in connection with copies" of the work, such as the "title" and the "name of . . . the author." § 1202(c)(1)-(2). Kobi Karp alleges that the Defendants submitted copies of its designs to the Board after removing Kopi Karp's name from the design copies.

The Defendants argue Kobi Karp fails to state a claim for a violation of the DMCA because the DMCA only applies to "electronic commerce." The Defendants cite to nonbinding cases, which hold that, because Congress intended the DMCA to apply only to the electronic marketplace, the plaintiff must link the removal of the CMI to "the internet, electronic commerce, or any other purpose for which the DMCA was enacted." *Brown v. Stroud*, 2011 WL 2600661, at *17 (N.D. Cal. June 30, 2011); *see also, MDY Inds., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942 (9th Cir. 2010) ("In enacting the DMCA, Congress sought to mitigate the problems presented by copyright enforcement in the digital age").

Other courts have examined the plain language of the statute and approved the DMCA's application to non-technological contexts. *See Murphy v. Millennium Radio Group LLC*, 650 F.3d 295 (3d Cir. 2011) (rejecting the contention applies only to electronic commerce because the defendants "do not contend that § 1202 is, in itself, ambiguous or unclear" and "[t]he statute imposes no explicit requirement that such information be part of an automated copyright protection or management system"); *Roof & Rack Products, Inc. v. GYB Investors, LLC*, 2014 WL 3183278, at *5 (S.D. Fla. July 8, 2014) (Hurley, J.) ("Because the Court must consider a statute's plain meaning before it considers its legislative history, Roof & Rack's allegations are sufficient to state a claim for

violation of the DMCA"); *see also*, *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305-06 (S.D.N.Y. 2011). For example, the Southern District of New York noted that the technology limitation relies "heavily on the DMCA's legislative history" and declined to adopt it because courts "do not resort to legislative history to cloud a statutory text" when the statute's language is clear. *Agence France Presse*, 769 F. Supp. 2d at 306. A recent Southern District of Florida opinion follows this rationale. *See Landscape Design Workshop, LLC v. Minto Communities, LLC*, 2018 WL 7046958, at *2 (S.D. Fla. Dec. 21, 2018) (Dimitrouleas, J.). In *Landscape Design*, the plaintiff, the first landscaper hired to design the property, alleged that the successor landscaper removed the plaintiff's marks from the plans and submitted them to the City for permitting. These allegations were sufficient to state a claim under the DMCA.

Because the Court must consider a statute's plain meaning before it considers its legislative history, *see e.g. United States v. Yates*, 733 F.3d 1059, 1064 (11th Cir. 2013), the Court declines to adopt the Ninth Circuit's limitation of the DMCA to electronic commerce. Kobi Karp's allegations are sufficient to state a claim.

### C. Trademark Infringement

The Plaintiffs bring several different claims relating to the Defendants' alleged infringement on its trademarks: trademark infringement under the Lanham Act, unfair competition under the Lanham Act, dilution under Florida statutory law, trademark infringement under Florida common law, and unfair competition under Florida common law. (*See* ECF No. 37.) These claims all respond to the Defendants' submission of the drawings to the HPB without removing Kobi Karp's trademarks. All of these trademark claims fail because the submission of the drawings to the HPB does not constitute "use in commerce" that is likely to confuse consumers.

To prevail on a trademark infringement claim, a plaintiff must show "(1) that [it] possess[es] a valid mark, (2) that the defendants used the mark (3) that the defendants' use of the mark occurred in commerce (4) that the defendants used the mark in connection with the sale or advertising of any goods, and (5) that the defendants used the mark in a manner likely to confuse consumers." *North Am. Medical Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1218 (11th Cir. 2008). "The first step of a trademark infringement action is to demonstrate an unauthorized use of the plaintiff's mark in commerce." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1242 (11th Cir. 2007). "Use in commerce" for services occurs when a mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country

and the person rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127. Here, Kobi Karp alleges that the Defendants submitted their drawings with Kobi Karp's trademarks to the HPB for approval. This does not constitute a use in commerce because the submission of the drawings to the HPB was not in connection with the sale or advertising of the Defendants' services, and the HPB is not a consumer or potential consumer of architectural services. *See Technoglass, LLC v. RC Home Showcase, Inc.*, 310 F. Supp. 3d 1267, 1275 (S.D. Fla. 2017) (Scola, J.) ("It is unlikely that use of the drawings in the NOA application constitutes commerce, or that Miami-Dade County can constitute a consumer, or both."). The Second Amended Complaint does not allege that the Defendants use of the mark occurred in commerce, and therefore it failed to state a claim for copyright infringement. (*See* ECF No. 37.)

Moreover, the Defendants' submission of the drawings bearing Kobi Karp's trademarks is not likely to cause consumer confusion because HPB is not a consumer. HPB is a governmental body that approves or disapproves proposed changes to historic buildings. HPB is not a consumer or potential consumer of architectural services, and therefore Kobi Karp does not allege that a consumer saw the Defendants' use of the mark—nor that the use caused any consumer to be confused. (*see* ECF No. 37.) Because Kobi Karp does not allege that the Defendants used Kobi Karp's marks to advertise or sell services to consumers, Kobi Karp's trademark claims fail. *See Technoglass, LLC*, 310 F. Supp. 3d at 1275.

Because the trademark infringement claim fails, the Florida trademark claims and the unfair competition claim fails as well. *Turner Greenberg Assoc., Inc. v. C&C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004) ("The legal standard for unfair competition . . . and trademark infringement under both the Lanham Act and common law has been held to be essentially the same."); *Planetary Motion v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n. 4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a measuring stick in evaluating the merits of state law claims of unfair competition."); *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1025-26 (11th Cir. 1989) ("the elements of common law and statutory trademark infringement are the same."). The parties agree that virtually the same standard applies to all of the trademark claims[1] (*See* ECF Nos. 41 at 24; 53 at 15.) Therefore, the Court grants the motions to dismiss with respect to the federal and Florida trademark claims.

---

[1] To the extent that the Plaintiff's dilution claim under § 495.151, Florida Statutes, is not included in this analysis, the claim fails because "non commercial use of the mark" is "not actionable under this section." Fla. Stat. § 495.151(3)(b).

### D. Abstention

The Surf Club argues that the Court should stay the case pending the resolution of a related state court action in which The Surf Club sued Kobi Karp for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent billing, and unfair and deceptive trade practices. (ECF No. 58 at 1.)

Under *Colorado River*, a district court may dismiss or stay an action where there is an ongoing parallel action in state court only in "exceptional circumstances." *See Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). A parallel state action "is one involving substantially the same parties and substantially the same issues." *Ambrosia Coal Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004). This rule provides for an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. In determining whether "exceptional circumstances" exist, the district court should consider the following factors:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*Moorer*, 374 F.3d at 997 (citations omitted). "The decision whether to dismiss does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (citation omitted).

After considering the factors, the Court has determined that exceptional circumstances do not exist here. Even if the state and federal cases have substantially similarity issues rendering the cases "parallel," the balance of the *Colorado River* factors weigh against abstention. The second, third, and fifth factors weigh heavily against abstention because (2) the federal and state courts are equally convenient to the parties, (3) the federal court case was filed first, and (5) the copyright claims are brought under federal law.

Moreover, the first and fourth factors do not favor abstention. The first factor does not apply. And, the fourth factor—the desire to avoid piecemeal litigation—does not favor abstention "unless the circumstances will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1306 (S.D. Fla. 2014) (Cohn, J.). The only overlapping issue that The Surf Club points to is the possibility of litigating

whether it complied with the agreement twice—once in the state court case to determine whether it breached of contract and once in this case to prove its affirmative defense that it obtained a nonexclusive a license from Kobi Karp under the Agreement. However, it appears that the majority of the factual and legal issues in this case are unique from the state court case, and therefore, the piecemeal litigation is not "abnormally excessive or deleterious."

In short, the Court declines to abstain from this case because the balance of the *Colorado River* factors weigh against abstention.

### 4. Conclusion

The Court **grants in part and denies in part** the Defendants' motions to dismiss (**ECF Nos. 41, 58**.) The Court denies the motions as to counts one, two, three, and four. Counts one, two, three, and four may proceed. The Court grants the motions as to counts five, six, seven, and eight. Counts five, six, seven, and eight are dismissed.

**Done and ordered** at Miami, Florida, on July 27, 2020.

_____
Robert N. Scola, Jr.
United States District Judge